IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARCO ANTONIO TORRES RUBIO                                    PLAINTIFF

          v.                        Civil No. 07-5156

DEPUTY LARKIN, Benton County
Detention Center; DEPUTY COLLINS,
Benton County Detention Center; and
DEPUTY MONROE, Benton County
Detention Center                                             DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Marco Antonio Torres Rubio (hereinafter Rubio), brings this *pro se* civil rights

action pursuant to 42 U.S.C. § 1983. Rubio contends his constitutional rights were denied while

he was incarcerated at the Benton County Detention Center. Specifically, he maintains excessive

force was used against him.

Defendants filed a motion for summary judgment (Doc. 27). To assist Rubio in

responding to the motion, I entered an order (Doc. 35) directing Rubio to complete, sign, and

return the attached questionnaire that would serve as his response to the summary judgment

motion. Rubio filed a timely response to the court's questionnaire (Doc. 36). The case is

currently before the undersigned for the issuance of a report and recommendation on the

summary judgment motion.

**I. BACKGROUND**

Rubio was booked into the Benton County Detention Center (BCDC) on April 12, 2007,

on a hold for the United States Marshal Service and the Arkansas Department of Correction.

*Plaintiff's Response* (Doc. 36)(hereinafter *Resp.*) at ¶ 1. An immigration detainer was filed by

-1-

Michael Boze authorizing Rubio's detainment and informing him that an investigation had been initiated to determine if he subject to removal from the United States. *Id.* at ¶ 4.

On April 13th Rubio signed an inmate medical insurance information form agreeing to be responsible for any and all medical bills for treatment of any pre-existing injury or illness. *Resp.* at ¶ 5. On April 23rd Rubio submitted a medical request to see the doctor about being diabetic. *Id.* at ¶ 6(A). Rubio was seen by Dr. Huskins on April 25th for diabetes. *Id.* at ¶ 6(B). Rubio told Dr. Huskins he was on medication but didn't know what it was. *Id.* He was started on Glucophage and a diabetic diet. *Id.* His sugar was to be monitored. *Id.*

On May 31st Rubio submitted a grievance stating that he asked for his medication and Monroe refused to give it to him. *Resp.* at ¶ 7(A). He stated he was not feeling well and Monroe pushed him against the wall and said to get back to the pod. *Id.* In response, Captain Petray said he would check into this matter. *Id.* at ¶ 7(B). Captain Petray examined Rubio's jail file and found nothing in regards to Rubio having been pushed by Monroe on May 25th as alleged in Rubio's complaint. Doc. 29 at ¶ 23. Rubio states the Captain never came and talked to him about any of his complaints. *Resp.* at ¶ 7(C).

According to Rubio, on or about May 25th, he asked for his diabetes medication and Monroe replied that he was "too late." *Resp.* at ¶ 7(D). Rubio states he replied: "But I need my medicine because it's for my diabetic problem." *Id.* At that point, Rubio states Monroe came towards him and "pushed me against the wall, with my arm behind my back, using profane language." *Id.* Rubio suffered no injuries as a result of the use of force. *Id.* This was the only time Monroe denied Rubio medication. *Id.* at ¶ 7(E).

-2-

On August 8th, Deputy Collins was assigned to D-pod. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 4 at page 3. Collins was in pod control and ordered Rubio to go back inside D-150. *Id. See Resp.* at ¶ 8(A)(without knowledge to agree or disagree-I don't remember Collins telling me to go back inside). Larkin was also assigned to work D-pod. *Resp.* at ¶ 8(B). D-150 was let out for recreation. *Id.*

According to Larkin, Rubio came out of D-150 and asked for toilet paper. *Defts' Ex.* 4 at page 5. Larkin indicates Collins told Rubio that he was not going to get toilet paper that it was passed out by third shift and it was handed out yesterday. *Id.* Rubio was then instructed to go back to his pod. *Id.*

Rubio states he asked for toilet paper and Larkin asked for the empty toilet roll. *Resp.* at ¶ 8(C). According to Rubio, because the restroom is in the common area, when the toilet paper roll was empty, inmates were required to bring the empty roll to the officer who would trade a full roll for the empty roll. *Id.* at ¶ 28. Rubio indicates he replied he didn't have it because it wasn't there. *Id.* at ¶ 8(C). Rubio states he told Larkin that he really had to use the restroom. *Id.* At this point, Rubio maintains Larkin "came towards me and punched me in my face after I asked him to at least open my cell so I could get some tissue." *Id.*

According to Larkin, when Rubio was instructed to go back to his cell he said: "No, I want toilet paper." *Defts' Ex.* 4 at page 4. According to Rubio, this is when he told Larkin he really had to use the bathroom and if he wouldn't let him have any tissue would he please let me in my cell so I could get some. *Resp.* at ¶ 9.

Larkins' report indicates they again ordered Rubio to enter the pod and he did not comply. *Defts' Ex.* 4 at page 4. Rubio maintains he did not have time to agree or disagree.

-3-

*Resp.* at ¶ 10.  Rubio asserts that after Larkin hit him the other officers started to hit and kick him.  *Id.*

At this point, Larkin reports he went to the pod door and grabbed Rubio's left arm to escort him to the pod.  *Defts' Ex.* 4 at page 4.  When he did so, Larkin states Rubio pulled away and pulled his right arm back and made a fist.  *Id.*  Rubio states he had no choice because he was too busy trying to protect himself from their punches and kicks.  *Resp.* at ¶ 12.

Larkin then placed Rubio on the floor using an arm bar takedown maneuver. *Defts' Ex.* 4 at page 4.  *See Resp.* at ¶ 13(without knowledge to agree or disagree–If so, it was after they had beaten me.).  Collins came into the pod and put handcuffs on Rubio.  *Defts' Ex.* 4 at pages 3 & 4.  Larkin and Collins helped Rubio to his feet and escorted him to pod control.  *Resp.* at ¶ 15.

When outside D-150, they instructed Rubio to go to his knees multiple times.  *Defts' Ex.* 4 at pages 3 & 4.  Rubio did not comply.  *Id.  See Resp.* at ¶ 16 (Disagree–I was scared.  I've seen several incidents where police officers at this jail used physical abuse on inmates.).  Larkin and Collins delivered common peronial knee strikes and placed Rubio on his knees.  *Defts' Ex.* 4 at pages 3 & 4.  Rubio denies this occurred.  *Resp.* at ¶ 17.

Larkin and Collins then escorted Rubio to lock down in E-pod.  *Defts' Ex.* 4 at pages 3 & 4*; Resp.* at ¶ 18.  Rubio maintains while he was on his knees and cuffed behind his back, Larkin punched him in the head and started hitting and kicking him while calling him racial slurs.  *Id.*

According to Rubio, both Larkin and Collins kicked and punched him.  *Resp.* at ¶ 19 & ¶ 20.  Rubio asserts he did not resist.  *Id.*  As a result of the use of force, he indicates he had knots all over his head, bruises over his body, and started suffering from chest, back, neck, and

-4-

other injuries. *Id.* He saw the doctor and kept requesting that he run tests but the doctor never ran tests or recommended that any tests be done. *Id.* Rubio did receive some medications but he didn't feel they did any good. *Id.* at ¶ 20. He requested stronger doses of medication but he felt Dr. Huskins always "shooed" him away. *Id.*

Rubio also indicates he is currently waiting to see a specialist about the problems he is having with his neck, back, head, and leg. *Resp.* at pages 17-18. He asserts the incident also "bothers me mentally because sometimes I dream about the incident and I awake shaking & in cold sweat. I'm now scheduled to see a psychologist." *Id.* at page 18.

Rubio was charged with a disciplinary violation of refusing to obey the order of a deputy as a result of this incident. *Resp.* at ¶ 21. After a hearing Rubio was found guilty and given ten days lock down and loss of privileges. *Id.* at ¶ 22. He appealed and the decision was upheld. *Defts' Ex.* 4 at ¶ 23. *See Resp.* at ¶ 23 (without knowledge to agree or disagree).

Rubio was released from the BCDC on January 17, 2008. *Resp.* at ¶ 24. Other than August 8th he had access to toilet paper. *Id.* at ¶ 25.

All decisions regarding Rubio's medical care at the BCDC were made by the jail nurse and jail doctor. *Resp.* at ¶ 26. He received all medication prescribed to him by the medical personnel although he states there were times he received it a couple of days late. *Id.* at ¶ 27. As he is diabetic, Rubio asserts it was important that he receive his medication everyday. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  DISCUSSION

Defendants have moved for summary judgment.  They maintain excessive force was not used against Rubio.  To the extent the complaint can be read to be asserting any other claims such as a denial of medical care, verbal abuse, or unconstitutional conditions of confinement, they maintain these claims fail as a matter of law.

### *Excessive Force*

Rubio was being held at the BCDC for the Arkansas Department of Correction.  *Resp.* at ¶ 1.  The Eighth Amendment therefore applies to his excessive force claim.  "[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences."  *Wilson v. Spain*, 209 F.3d 713 (8th Cir. 2000)(*citing Whitley v. Albers*, 475 U.S. 312, 318-322, 106 S. Ct. 1078, 89 L. Ed. 2d 251

-6-

(1986)).  "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)(citations omitted).  The Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always  are violated." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (*quoting Hudson*, 503 U.S. at 6-7).  To make this determination, the court is to consider, among other things, the following factors: "the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Jones*, 207 F.3d at 495 (citations omitted).

With respect to the incident with Monroe on May 25th, Rubio's claim fails as a matter of law because he suffered no injury as a result of Monroe's application of force.  *Resp.* at ¶ 7(D).  To prevail on an Eighth Amendment excessive force claim, the plaintiff must have suffered actual injury.  *See e.g., Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)(While significant injury isn't required, actual injury is.  Actual injury requirement satisfied where James sustained bruises and a facial laceration and was taken to the hospital,  Earnestine's knees were bruised and her blood pressure was elevated, and LaQuestia suffered from posttraumatic stress disorder.).  *See also United States v. Miller*, 477 F.3d 644,  647 (8th Cir. 2007)(O'Neil was taken

-7-

to the emergency room for treatment.  His injuries consisting of a bruised and swollen left eye and a reddish-purple face.  Actual injury requirement satisfied).

With respect to Rubio's claims against Collins and Larkin stemming from the August 8th incident, the parties' give contradictory versions of what occurred between them on that date. According to Rubio, he was punched in the face immediately after being told by Larkin he wasn't going to be given any toilet paper. *Resp.* at ¶ 8(A).  Rubio then contends he was hit and kicked multiple times while he was handcuffed.  *Id.* at ¶ 18.  Rubio maintains he suffered physical injuries as a result, sought and received medical treatment, and is still suffering as a result of the injuries.  *Id.* at ¶ 19 & ¶ 20.

According to Collins and Larkin, Rubio refused multiple times to comply with their orders, resisted Larkin's efforts to escort him back into the pod, made an aggressive move towards Larkin, and had to be controlled using a takedown maneuver.  *Defts' Ex.* 4 at pages 3 & 4.  Even after Rubio was cuffed, Collins and Larkin maintain Rubio refused orders to go to his knees and common peronial knee strikes had to be used to place him on his knees.  *Id.*

Rubio was charged with and found guilty of refusing to obey the order of a deputy.  *Resp.* at ¶ 21.  However, this disciplinary finding does not preclude a finding that excessive force was used against him.

Given the contradictory versions of what occurred, we believe there are genuine issues of material fact as to whether excessive force was used against Rubio on August 8th by Collins and/or Larkin.  To grant summary judgment in favor of Collins and/or Larkin would require the court to adopt their version of the events over that of Rubio.  The court is not free to do this at the summary judgment stage.

### Other Claims

To the extent the complaint can be read to be asserting a claim of denial of medical care against Monroe, we believe the defendants are entitled to summary judgment on this claim. Rubio concedes all decisions regarding his medical care were made by the jail nurse or jail doctor at the BCDC. *Resp.* at ¶ 26. He also concedes the only time Monroe denied him medication was on May 25th. *Resp.* at ¶ 7(E). *See e.g., Zentmeyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir. 2000)(Occasional missed dose of medicine does not violate the Eighth Amendment); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987)(inmate with heart condition missed a morning dose of medication; no showing that this was an instance of callous disregard in the face of a pressing medical emergency); *Herndon v. Whitworth*, 924 F. Supp. 1171 (N.D. Ga. 1995)(Occasional missed doses of medication do not implicate the Constitution)

To the extent the complaint attempts to assert a claim based on Larkin's or Collin's verbal abuse, the claim fails as a matter of law. Taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985)(being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim). *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the

-9-

AO72A
(Rev. 8/82)

prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

Finally, to the extent the complaint can be read to be asserting an unconstitutional conditions of confinement claim based on the fact that Rubio was not provided with toilet paper on August 8th, the claim fails. Rubio concedes this was the only time he did not have access to toilet paper. *Resp.* at ¶ 25. Moreover, he makes no argument that he did not have access to toilet paper when he was moved to E-pod following his encounter with Collins and Larkin. At most, Rubio did not have access to toilet paper for a short period of time on August 8th.

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise." *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)).

"[E]xtreme deprivations are required to make out a conditions-of-confinement claims. [O]nly those deprivations denying the minimal civilized measure of life's necessities are

-10-

sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 112 S. Ct. at 1000; *Myers v. Hundley* 101 F.3d 542, 544 (8th Cir. 1996); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).  Rubio's allegations are clearly insufficient.

## IV.  CONCLUSION

I therefore recommend that the motion for summary judgment (Doc. 27) be granted in part and denied in part.  Specifically, I recommend the motion be granted with respect to all claims against Deputy Monroe.  To the extent the complaint can be read to be asserting denial of medical care claims, verbal abuse claims, and unconstitutional conditions of confinement claims, I also recommend that the summary judgment motion be granted.  Finally, I recommend that the motion be denied with respect to the excessive force claims against Deputy Larkin and Deputy Collins arising out of the incident on August 8, 2007.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of August 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-11-